IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VASILIOS D. KIRITSIS et al., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-1877 |
| STEWART TITLE GUARANTY CO., | * | |
| Defendant. | * | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Stewart Title Company's ("STGC") Motion to Dismiss (ECF No. 7) and Plaintiffs Vasilios D. Kiritsis's and Jennifer L. Kiritsis's ("Plaintiffs") Cross-Motion for Partial Summary Judgment (ECF No. 8). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motion to Dismiss and deny the Cross-Motion for Partial Summary Judgment.

## I.   BACKGROUND

**A.   Factual Background**[1]

Plaintiffs acquired title to a property located in Ocean City, Maryland, at 401 Bering Road (the "Property") in 2020. (Compl. ¶ 6, ECF No. 5). Plaintiffs purchased an owners' title policy from STGC, (id. ¶ 7), under which the legal description of the insured title included:

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 5) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

> All those lots or parcels of land lying and being situate in the Town of Ocean City, in the Tenth Tax District of Worcester County, Maryland, designated and described as Lots Nos. 1, 2 and 3, in Block "E", as shown on the Revised Plat No. 1 of Oceanbay City, dated December 1955, and recorded among the Land Records of Worcester County, Maryland, in Plat Book E.W.R. No. 2, folio 15; and as shown on exhibit A of Deed recorded as aforesaid in Liber R.H.O. No. 1950, folio 14, et seq.

(Title Insurance Policy at 4, ECF No. 7-2; Compl. ¶ 8). [2]

Additionally, the Title Insurance Policy explicitly enumerated covered risks, including but not limited to Covered Risk 9, which states, "[s]omeone has an encumbrance on [y]our Title," and Covered Risk 29, which states, "[y]our Title is unmarketable, which allows someone else to refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it." (Title Insurance Policy at 7–8). The policy also enumerated exclusions from coverage, including the following:

> You are not insured against loss, costs, attorneys' fees, and expenses resulting from [] [g]overnmental police power, and the existence or violation of those portions of any law or government regulation concerning: (a) building; (b) zoning; (c) land use; (d) improvements on the Land; (e) land division; and (f) environmental protection.

(Id. at 8).

In February 2023, Plaintiffs entered into a Contract of Sale to sell the Property to a real estate developer, who intended to replace the existing residence with three separate residential dwellings on the three lots covered under the Title Insurance Policy. (Compl.

---

[2] Citations to the Title Insurance Policy's page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

¶ 9). Plaintiffs allege that in connection with the plan to sell the property, the Director of Planning and the Zoning Administrator for the Town of Ocean City "confirmed in writing" that "the minimum lot area requirements of the Zoning Code shall not apply to Lots 1, 2 and 3 because they legally existed prior to January 19, 1993 and they each are separate buildable residential lots." (Compl. ¶ 10). In March 2023, a neighbor entered a claim ("Neighbor's Claim") against Plaintiffs asserting that the Property "could not be developed with three separate residential dwellings under Ocean City's Zoning Code." (Id. ¶ 11).

The Contract Purchaser of the Property sought to purchase title insurance from STGC in anticipation of closing on the sale of the Property. (Id. ¶ 13). However, STGC would not issue an owner's title policy to the purchaser "without excepting to the Neighbor's Claim." (Id.). Because of the Neighbor's Claim, Plaintiffs allege that Title to the Property is unmarketable, (id. ¶ 15), and that they are not able to convey Title to the Contract Purchaser "free and clear of all liens, claims and encumbrances," as the Contract of Sale requires. (Id. ¶ 14). Accordingly, the closing has been placed on hold pending resolution of the Neighbor's Claim. (Id.). Plaintiffs submitted a claim under their Title Insurance Policy ("Plaintiffs' Insurance Claim") requesting STGC to defend the marketability of their Title to the Property by bringing an action for declaratory judgment asserting the Neighbor's Claim's invalidity, or alternatively, by "issuing title insurance to the Contract Purchaser without excepting to the Neighbor's Claim." (Id. ¶ 16). STGC denied Plaintiffs' Insurance Claim. (Id. ¶ 17).

3

B.  **Procedural History**

Plaintiffs originally filed their Complaint in the Circuit Court for Worcester County on June 2, 2023, (ECF No. 1-4), seeking a declaratory judgment under Maryland Code Annotated, Courts and Judicial Proceedings § 3-406, et seq., determining the Parties' rights and liabilities under the Title Insurance Policy and declaring that STGC has "a duty to defend, indemnify and clear title to a third-party claim challenging the marketability of Plaintiffs' title to real property" (Count I). (Compl. ¶ 5). Plaintiffs also seek money damages for breach of contract, alleging that STGC's denial of Plaintiffs' Insurance Claim was a breach of its duty under the Title Insurance Policy to defend Plaintiffs' Title to the Property, which resulted in Plaintiffs' inability to convey marketable Title to the Contract Purchaser (Count II). (Id. ¶¶ 28–32). On July 12, 2023, STGC removed the case to this Court on the basis of diversity jurisdiction. (Notice of Removal ¶ 8, ECF No. 1). On July 18, 2023, STGC filed the instant Motion to Dismiss, (ECF No. 7), and on August 1, 2023, Plaintiffs filed an Opposition and the instant Cross-Motion for Partial Summary Judgment, (ECF No. 8). On August 14, 2023, STGC filed a Reply and an Opposition to Plaintiffs' Partial Cross-Motion for Summary Judgment. (ECF No. 11).

## II.  DISCUSSION

A.  **Standard of Review**

  1.  **Motion to Dismiss**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

4

defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

### 2. Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

### B. Analysis

#### 1. STGC's Motion to Dismiss

Plaintiffs allege in Count I of the Complaint that STGC is contractually obligated under the Title Insurance Policy to defend their Insured Title to the Property against the Neighbor's Complaint. (Compl. ¶ 22). STGC argues for dismissal, stating that the Title Insurance Policy does not cover Plaintiffs' Insurance Claim. (Mem. Supp. Mot. Dismiss ["Mot."] at 1–2, ECF No. 7-1).

It is undisputed that Maryland substantive law applies in this case. (See Compl. ¶ 6; Mot. at 5). Under Maryland law, in actions alleging breach of a contractual duty to defend under an insurance policy, courts apply a two-part test "to determine (1) the coverage and defenses under the applicable policy, and (2) whether the allegations against the insured potentially bring the claim within the coverage of the policy." Ask Realty II Corp. v. First Am. Title Ins. Co., CCB-04-1400, 2004 WL 1254005, at *4 (D.Md. June 7, 2004). An insurer's duty to defend "does not arise unless the allegations in the underlying action state a legal claim that is within the coverage of the policy." Id.

Under the first prong of the inquiry, the court must interpret the terms of the insurance policy. Id. Insurance policies, like all contracts, "are construed as a whole to determine the parties' intentions." Bushey v. N. Assurance Co. of Am., 766 A.2d 598, 600 (Md. 2001). Maryland has not adopted the rule followed in many jurisdictions that an insurance policy is "construed most strongly against the insurer." Id. at 601 (internal quotation omitted). Unless there is some indication that the parties intended a technical meaning, the terms of the policy "are given their customary, ordinary, and accepted meaning," which is the "meaning a reasonably prudent layperson would attach to the term." Id. at 600–01 (internal quotation omitted). If a term "suggests more than one meaning to a reasonably prudent layperson," then it is ambiguous; if the ambiguity remains after consideration of any extrinsic or parol evidence that may be introduced, then the ambiguity will be construed against the insurer. Id. at 601 (internal quotation omitted); Ask Realty II Corp., 2004 WL 1254005, at *4.

It is undisputed that the Title Insurance Policy at issue covers, in relevant part, circumstances where "[s]omeone else has an encumbrance on [y]our Title" (Covered Risk 9) and situations where "Title is unmarketable, which allows someone else to refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it" (Covered Risk 29). (Title Insurance Policy at 7–8). The Policy contains an exception that it does not insure against "loss, costs, attorneys' fees, and expenses resulting from [] [g]overnmental police power, and the existence or violation of those portions of any law or government regulation regarding: (a) building; (b) zoning; (c) land use; (d) improvements on the Land; (e) land division; or (f) environmental protection." (Id. at 8). The Title Insurance Policy states that STGC "will defend [y]our Title in any legal action only as to that part of the action which is based on a Covered Risk and which is not excepted or excluded from coverage in this Policy." (Id.).

The Court finds that the relevant contractual language is not ambiguous. Plaintiffs argue that the term "unmarketable" in Covered Risk 29 is ambiguous. (Pls.' Resp. Opp'n Mot. Dismiss and Cross-Mot. Partial Summ. J. ["Opp'n"] at 10, ECF No. 8). Plaintiffs contend that Covered Risk 29, which covers situations where "Title is unmarketable," should be interpreted to encompasses the Neighbor's Claim because the Claim caused the Contract Purchaser's refusal to close on the sale of the Property, thereby rendering the Property "unmarketable." (Id. at 10–11). The Court finds that the contract is clear that "unmarketable" refers to the Title, not the Property itself. If a storm destroyed part of a building on a piece of property, it would certainly make the property less desirable or

"marketable," but it would have no impact on whether the title to the property was valid. See Haw River Land & Timber Co. v. Laws. Title Ins. Corp., 152 F.3d 275, 278 (4th Cir. 1998) (discussing the distinction between marketable title and marketable property). "Title refers to the legal ownership of a property interest," such that one holding title to a property interest can defeat adverse claims of ownership. Id. "[M]arketable title is one which is 'free from reasonable doubt in law or fact as to its validity.'" Id. (quoting Burkhead v. Farlow, 146 S.E.2d 802, 805 (N.C. 1966)). Thus, the term "unmarketable," as used in Covered Risk 29 of STGC's standard Title Insurance Policy, unambiguously refers to situations where the validity of the insured's Title is in doubt, not situations where the covered property is simply less appealing to a buyer. As there is no evidence to suggest that the parties intended a technical definition, the term must be given this "customary, ordinary, and accepted meaning." Bushey, 766 A.2d at 600.

Under the second prong of the inquiry, the court must ascertain whether Plaintiffs' claims "potentially fall within the scope of the policy." Ask Realty II Corp., 2004 WL 1254005, at *5. "If the potentiality for coverage is uncertain, any doubt must be resolved in favor of the insured." Id.

STGC alleges that it is not required to prosecute or defend an action challenging the Neighbor's Claim because Plaintiffs' Insurance Claim falls outside the scope of the Title Insurance Policy or falls under an enumerated exception to the Title Insurance Policy. (Opp'n Cross-Mot. Partial Summ. J. and Reply Opp'n Mot. Dismiss ["Reply"] at 2, ECF

9

No. 11). Plaintiffs argue that their claim fits within their Title Insurance Policy and no exceptions to coverage apply. (Opp'n at 2). At bottom, the Court agrees with STGC.

First, Plaintiffs' Insurance Claim does not fall within any covered risks under the Title Insurance Policy. Plaintiffs contend that under the Title Insurance Policy, STGC has a duty to defend against the Neighbor's Claim that "Lots 1, 2 & 3 are not separately buildable under Ocean City's Zoning Code" because the claim "renders [their] title unmarketable." (Opp'n at 8). STGC argues that the Title Insurance Policy does not cover the issue of whether the Property can be "developed to accommodate three separate building lots" because that issue does not concern the Title to the Property, as it is not an encumbrance on Title, nor does it affect the marketability of Title. (Mot. at 6). The Court finds that it is the existence of the Neighbor's Claim, rather than the zoning regulation, that Plaintiffs allege makes their Title unmarketable. Still, because the Neighbor's Claim does not relate to the legal Title of the Property but rather to the underlying use of the Property, it is not a matter of Title within the scope of the Title Insurance Policy.

Title insurance protects property holders against loss or damage resulting from defects or unmarketability in the title of the property held by the insured. Stewart Title Guar. Co. v. West, 676 A.2d 953, 960 (Md.Ct.Spec.App. 1996). As the Fourth Circuit Explained in Haw River Land & Timber Co.:

> Title refers to the legal ownership of a property interest so that one having title to a property interest can withstand the assertion of others claiming a right to that ownership . . . [A]n insurance policy insuring legal title covers only the right of the owner to assert ownership against others claiming ownership or an interest in that ownership.

152 F.3d at 278.

While the Neighbor is asserting a legal claim regarding the Property, the claim has nothing to do with ownership of the Property. The Neighbor's Claim seeks a judicial order that Plaintiffs' Deed "consists of a single lot as opposed [to] three separately buildable lots." (Opp'n at 8). As Plaintiffs describe it, the Neighbor's Claim does not assert any ownership interest. It is not the purpose of title insurance to insure against any possible claim brought against owners of a property; rather, as its name suggests, its purpose is to insure against claims to the title of the property at issue. The Covered Risks that Plaintiffs cite to in the Title Insurance Policy, including Covered Risks 9 and 29, only refer to claims that encumber or affect the marketability of the Title to the Property. Contrary to what Plaintiffs argue, it is immaterial to this dispute that Ocean City zoning officials confirmed that certain zoning restrictions do not apply to the Property. (See Opp'n at 5). While that confirmation would presumably be helpful in defending against the Neighbor's Claim, it does not change the fact that the Neighbor's Claim does not concern the validity of the Title or, in other words, the validity of the ownership of the Property. See Haw River Land & Timber Co., 152 F.3d at 276, 279 (finding ordinance prohibiting plaintiff that purchased timber deed to 712 acres of land from harvesting timber on 179 of those acres did not render title to the property "unmarketable" for purposes of title insurance coverage).

Additionally, the legal description of the property in the Deed and Title Insurance Policy as being comprised of "Lots Nos. 1, 2, and 3 in Block E" does not change the analysis. Even viewing the facts in the light most favorable to Plaintiffs, the Neighbor's

11

Claim does not call into doubt the validity of this description as it relates to the Property's ownership. Because the Neighbor's Claim does not challenge the validity of Plaintiffs' legal Title to the Property, it could not possibly be covered by the Title Insurance Policy, and dismissal of this case is appropriate.[3]

### 2. Plaintiffs' Cross-Motion for Summary Judgment

Plaintiffs request partial summary judgment that STGC has a duty to defend them from the Neighbor's Claim. (Opp'n at 2). Because the Court finds that Plaintiffs have not brought a claim that potentially falls under their Title Insurance Policy, STGC has no duty to defend. See Reames v. State Farm Fire & Cas. Ins., 683 A.2d 179, 186 (Md.Ct.Spec.App. 1996), cert. denied, 686 A.2d 635 (Md. 1996)). Plaintiffs' Motion will be denied.

Even if Plaintiff's Insurance Claim fell within the scope of the Title Insurance Policy, Plaintiffs' Motion would be denied based on the existence of material questions of fact in the record. See Fed.R.Civ.P. 56(a), (c)(1)(A). Plaintiffs and STGC dispute whether the Title Insurance Policy covers the Neighbor's Claim. An insurer's duty to defend "depends on (1) the scope of the policy's coverage and (2) whether the allegations in the underlying suit bring the claim within this coverage." Back Creek Partners, LLC v. First Am. Title Ins. Co., 75 A.3d 394, 399 (Md.Ct.Spec.App. 2013); Ask Realty II Corp., 2004 WL 1254005, at *4. In reviewing a Motion for Summary Judgment, a court is limited to the facts in the record. Fed.R.Civ.P. 56(a), (c)(1)(A). The Neighbor's Claim is nowhere in

---

[3] Because the Court finds that Plaintiffs' Insurance Claim does not fall within the Title Insurance Policy, it need not reach STGC's second argument that Plaintiffs' Insurance Claim falls within an enumerated exception to the Title Insurance Policy.

this record, and, accordingly, the Court cannot review the allegations in the underlying suit to determine whether they bring the Claim within the Title Insurance Policy's coverage. Therefore, Plaintiffs' Cross-Motion for Partial Summary Judgment must be denied.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant STGC's Motion to Dismiss (ECF No. 7) and will deny Plaintiffs' Cross-Motion for Partial Summary Judgment (ECF No. 8). A separate Order follows.

Entered this 7th day of February, 2024.

/s/
George L. Russell, III
United States District Judge